**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **RUFUS TREVILLION, SR. AND LOLETTE TREVILLION** | **CIVIL ACTION:** _____ |
| **VERSUS** | **JUDGE** _____ |
| **UNION PACIFIC RAILROAD** | **MAGISTRATE JUDGE** _____ |

**COMPLAINT**

Plaintiffs, Rufus Trevillion, Sr. (hereinafter, "Rufus") and Lolette Trevillion (hereinafter, "Lolette"), through undersigned counsel, for their complaint against Defendant, Union Pacific Railroad (hereinafter, "Union Pacific"), allege as follows:

**PARTIES**

1.

Rufus is of the full age of majority and maintains a primary residence in Allen Parish, Louisiana, and is a citizen of the State of Louisiana within the meaning of and intent of 28 U.S.C. §1332.

2.

Lolette is of the full age of majority and maintains a primary residence in Allen Parish, Louisiana, and is a citizen of the State of Louisiana within the meaning of and intent of 28 U.S.C. §1332.

3.

At all pertinent times hereto, Rufus and Lolette are husband and wife

4.

Named Defendant herein is Union Pacific Railroad Company, a foreign corporation authorized to do business in the State of Louisiana, organized and existing under the laws of the State of Delaware, with its principle place of business in the State of Nebraska and is a citizen of the States of Delaware and Nebraska within the meaning of and intent of 28 U.S.C. §1332. Union Pacific may be served pursuant to Rule 4 of the Federal Rules of Civil Procedure at C.T. Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

**JURISDICTION AND VENUE**

5.

This civil action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. This civil action also arises under the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, et seq. This Court has jurisdiction under the provisions of 28 U.S.C. §1343(4) and 42 U.S.C. §2000e-5f and 42 U.S.C. §12117.

6.

Alternatively, there is complete diversity of citizenship between Plaintiffs and Defendant within the meaning and intent of 28 U.S.C. § 1332 and the amount in controversy exceeds the sum of $75,000, exclusive of interest and cost of suit. Therefore, this Court maintains subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

7.

The venue of this action is properly placed in the Western District of Louisiana pursuant to 28 U.S.C. §1391 because the facts giving rise to plaintiffs' claim occurred in this district.

## FACTUAL ALLEGATIONS

8.

Rufus, an African-American male, was hired by Union Pacific on or about October 6, 1980.

9.

By the date of his termination, (August 14, 2014), Rufus was the Lead Bridge Tender for Union Pacific in Lake Charles.

10.

At the time of his termination, Rufus' hourly wage was $25.90 per hour.

11.

Additionally, Rufus had medical benefits, retirement benefits, and other fringe benefits as an employee of Union Pacific.

12.

On July 28, 2014, Rufus had his annual physical conducted by Dr. Daniel Renois.  The only diagnoses contained in the annual physical were hypertension, hyperlipidemia, and sciatica. All of these conditions were being treated with medication.  None of the medications interfered or impaired Rufus from his job as Lead Bridge Tender.

13.

On August 6, 2014, Rufus was assessed by a Union Pacific employee and no issues were noted.

14.

Prior to August 13, 2014, Rufus had informed his team to maintain grease on each end of the bridge at Westlake.

15.

On August 13, 2014, at approximately 9:30 a.m. Signalman Casey Dickerson and Joe Hayes checked on the east-west bridge at Westlake.  Signalman Casey informed Rufus of a rail joints that was up.  The failure to correct the rail joints would cause the signal to fail, potentially causing a hazardous condition.

16.

Rufus informed Shane Dauphine about the condition.  Dauphine became belligerent about the condition of the bridge.  Rufus questioned why the greasing could not be performed subject to the routine maintenance schedule.  After Dauphine informed him of the reason, Rufus informed Dauphine that he was going to take care of the issue, Dauphine grabbed Rufus and assaulted him. Rufus informed Dauphine not to assault or place a hand on him again.

17.

Fellow Union Pacific employee, Keith Townsend, stated that if Dauphine had acted in the same manner toward him, Townsend would have hit him.

18.

Rufus informed his supervisor of the manager's assault on him.  The supervisor sent Rufus home from work.

19.

After informing the Director and his supervisor, Rufus called the Westlake Police Department and filed a complaint.  The criminal complaint was never prosecuted by the District Attorney's Office.

20.

On August 14, 2014, after all of the events of the previous day, Keith Townsley called Rufus and informed him that he was pulled out of service.  Townsley informed Rufus that he was also out of service for August 15, 2014, and that he was referring Rufus to the medical department.

21.

Townsley also informed Rufus that "he would be paid for every day of work he missed." Townsley did not conduct any investigation into the incident in question.

22.

Because of the potential for issues between Dauphine and Rufus, Townsley invoked the medical department in order for time for Dauphine to be reassigned and claimed that Rufus was dizzy and moody.

23.

On August 14, 2014, Rufus saw Dr. Renois after the incident in question.  Rufus was disturbed and shaken as a result of the incident and Dr. Renois prescribed Vistaril for agitation/anxiety.

24.

On August 16, 2014, Paul Simmons called Rufus and informed him that he was out of service.  Mitch Martindale also subsequently informed Rufus that he had been taken out of service.

25.

On August 18, 2014, Rufus talked to Union Pacific Nurse Rhonda Ross regarding his physical condition.  Nurse Ross stated that he was out of service.

26.

Due to Union Pacific's actions, Rufus felt that he was now in an unsafe and hostile working environment.

27.

Further, two other white males, Mitchell Marcantel and Chris Mumaw, violated safety rules and did not always comply with all of the job requirements.

28.

In a certified letter dated August 18, 2014, from Kenneth M. Sito to Rufus, requesting a medical review based on Supervisor-Requested Evaluation.  The letter cites the applicable page of the Policies and Procedures Manual for Union Pacific as follows:

> If a Supervisor observes an employee's unsafe behavior(s) that may be associated with a physical or mental condition, or the Supervisor becomes aware of an Employee's unsafe behavior(s) or medical condition which might be associated with an Employee's physical or mental impairment, the Supervisor should immediately: 1) notify the Health Services Department (HSD) and/or the Local Manager-Employee Assistance (Manager-EA) in cases of possible substance abuse or mental impairment, and 2) temporarily assign the Employee alternative job duties in a safe working environment during the evaluation period.  The Supervisor must notify the employee, in writing that the Fitness for Duty Evaluation has been requested in either instance.  When the Supervisor requests a Fitness-for-Duty evaluation, the evaluation consists of a drug screen, and other examination(s) as deemed necessary by the HSD.

29.

On August 19, 2014, Russell Young informed Rufus that Mr. Duplantis was being taken off the bridge and that once medical cleared him, he would be required to return to work.

30.

During the same conversation, Mr. Young threatened that Rufus would lose his job if he got a lawyer and went to court.

31.

On August 19, 2014, Dauphine was reassigned by Union Pacific from the bridge at Westlake.

32.

Rufus became depressed after the incident and his inability to be returned to work for Union Pacific.  Dr. James Quillin eventually diagnosed an adjustment disorder with depression and anxiety.

33.

On or about September 3, 2014, Rufus was informed by his union representative, Ricky Richard, to apply for unemployment benefits.

34.

Union Pacific continually interfered with Rufus' unemployment benefits over the next year and a half, improperly exhausting his sick leave after unemployment benefits had been granted under the Railroad Unemployment Insurance Act.

35.

On September 4, 2014, a Union Pacific Nurse requested Rufus see Dr. Fayez Shamish in Lake Charles the following day at 10:30 a.m.  Dr. Shamish did not find anything wrong with his medical condition.

36.

However, Dr. Shamish ordered an EEG for Rufus, which was conducted on September 25, 2014.

37.

Dr. Shamish found nothing medically wrong with Rufus and the EEG was within normal limits.  As a result of Dr. Shamish' conclusions, Union Pacific ordered Rufus to appear at a medical office of Dr. Frielburg in Lafayette in November.  The environment of the medical office was completely unprofessional, including having a dog at the medical office.

38.

Because Union Pacific was doctor shopping to find something wrong with Rufus and he refused to see Dr. Frielburg because of the unprofessional environment.

39.

Union Pacific posted Rufus' job for replacement on September 26, 2014, and upon information and belief, hired Rufus' replacement before the end of 2014.

40.

Despite Rufus never seeking medical leave, Rufus was granted a Medical Leave of Absence by Union Pacific that ran from August 15, 2014, through October 15, 2014.

41.

On December 22, 2014, Union Pacific asked Dr. Quillin to perform additional diagnostic testing to determine whether Rufus had any cognitive deficits or memory impairments.

42.

By letter dated December 30, 2014, Union Pacific extended the medical leave of absence through January 31, 2015.

43.

Since August 14, 2014, Rufus has never returned to work.  Rufus also was never offered any accommodation for any disability or type of disability, and Rufus has never received any correspondence or notification for him to return to work at Union Pacific.

44.

Further, the incident that occurred on August 13, 2014, has triggered all of Rufus' medical issues which

45.

On or about February 6, 2015, Rufus filed a complaint of racial discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

46.

On or about September 26, 2015, Rufus filed an amended complaint with the EEOC, alleging violations of the Americans with Disabilities Act.  This amendment was provided by the EEOC via letter from Ronnette Ramirez, federal investigator for the EEOC.

47.

On February 8, 2018, the EEOC issued a right to sue letter to Rufus.  Upon information and belief, Rufus received the letter on or about February 12, 2018.

48.

Rufus has exhausted all administrative remedies and now maintains a right to bring a civil action under federal law.

## CAUSES OF ACTION
## COUNT I
### (Violation of Title VII—Race Discrimination)

49.

Plaintiffs reincorporate and reallege Paragraphs 1-48.

50.

Rufus shows that the above described actions of Defendant deprived him of the benefits, income, privileges, terms and conditions of his employment with defendant because of his race in violation of the provisions under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, et seq.  Specifically, Union Pacific treated Rufus differently than white employees who held the same position.

51.

Rufus shows that the actions of Union Pacific were simply a pretext for his determination and that Union Pacific did not have a legitimate, non-discriminatory reason for terminating his employment.

52.

As a result of Defendant's actions, Plaintiffs have suffered damages in the following areas:

a) Past, present, and future loss of earnings and fringe benefits;

b) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c) Loss of consortium

d) All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

## COUNT II
### (Violations of the Americans with Disability Act)

53.

Rufus reiterates and incorporates Paragraphs 1-53.

54.

Union Pacific perceives that Rufus has a disability and is a qualified individual with a disability.

55.

Union Pacific knew or should have known that Rufus was a qualified individual with a disability.

56.

At all material times hereto, Rufus was able to perform the essential functions of his job without complaint.

57.

Further, Rufus was not given any "reasonable accommodation" for his condition, either in the performance of his job or reassignment of his position.

58.

Rufus was able to maintain a regular work schedule with predictable attendance while employed at Union Pacific.

59.

The termination of Rufus from his employment with Union Pacific was an adverse employment decision to Rufus.

60.

Union Pacific is a covered entity as defined by the Americans with Disabilities Act (ADA) and is therefore required to comply with the statutes and regulations pertaining to the ADA.

61.

Union Pacific has discriminated against Rufus for perceiving to have a disability.

62.

As a result of Defendant's actions, Plaintiffs have suffered damages in the following areas:

a)  Past, present, and future loss of earnings and fringe benefits;

b)  Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c)  All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

**COUNT III**
**(Anti-Retaliation)**

63.

Rufus reiterates and incorporates Paragraphs 1-62 of this Complaint into this Count.

64.

Rufus asserts that Union Pacific's actions were retaliatory in nature and were specific to his complaints of his unequal treatment and his complaints regarding the assault and battery by Dauphine which was in contravention of Union Pacific's zero tolerance policy.

65.

Rufus further asserts that Union Pacific were retaliatory in nature because they continually doctor shopped in order to make it appear that Rufus was unable to come back to work.

66.

Rufus further asserts that Union Pacific were retaliatory in nature because they failed to accommodate Rufus at any time.

67.

As a result of Defendant's actions, Plaintiffs have suffered damages in the following areas:

a)  Past, present, and future loss of earnings and fringe benefits;

b)  Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c)  All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

**COUNT IV**
(Violation of Louisiana Anti-Discrimination Laws)

68.

Rufus reiterates and incorporates Paragraphs 1-67 of this Complaint.

69.

The allegations set forth herein violate Louisiana Revised Statute 23:323 and Louisiana Revised Statute 23:332 as Union Pacific's actions constitute discriminatory actions.

70.

Louisiana Revised Statute 23:303 permits civil suits on the basis of discrimination to be filed as civil actions.

71.

As a result of Defendant's actions, Plaintiffs have suffered damages in the following areas:

a)  Past, present, and future loss of earnings and fringe benefits;

b) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c) All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

## COUNT V
### (Louisiana Anti-Retaliation Claim)

72.

Rufus reiterates and incorporates Paragraphs 1-71 of this Complaint.

73.

Out of an abundance of caution and with a reservation of right to dismiss this claim if no such law exists under the current statutory scheme, Rufus asserts a retaliation claim against Defendant pursuant to Title 23 and Title 51 of the Louisiana Revised Statutes.

74.

Plaintiff requests all damages set forth in Paragraph 71 of the Petition to the extent that the law allows.

## COUNT VI
### (Louisiana Whistleblower Claim)

75.

Rufus reiterates and incorporates Paragraphs 1-74 of this Complaint.

76.

Rufus reported acts that were in violation of state law, i.e. the assault and battery of Dauphine.  No adverse action was taken against Dauphine, except for a reassignment within the company.

77.

The actions of Union Pacific further violate Louisiana Revised Statute 23:967.

78.

As a result of Defendant's actions, Plaintiffs have suffered damages in the following areas:

a)  Past, present, and future loss of earnings and fringe benefits;

b)  Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c)  All other damages allowable by law, including treble damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

**COUNT VII**
(Hostile Work Environment)

79.

Plaintiffs reiterate and reallege Paragraphs 1-78.

80.

Rufus was subjected to Dauphine's hostile actions which created a work environment to which Rufus was unable to return by the choice of Union Pacific.

81.

Further, Rufus' superiors were involved in a conspiracy to insure that Rufus did not return to work in the aftermath of the August 13 incident.

82.

As such, Rufus was subjected to a hostile work environment.

83.

As a result of Defendant's actions, Plaintiffs have suffered damages in the following areas:

a)  Past, present, and future loss of earnings and fringe benefits;

b)  Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c) All other damages allowable by law, including treble damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

**COUNT VIII**
(Negligent Supervision)

84.

Union Pacific had a duty to supervise Dauphine and prevent Dauphine from committing assault and battery upon other employees, such as Rufus.

85.

Union Pacific breached its duties to its employees in employing Dauphine, a person with a temper who resorted to physical violence on the job.

86.

It is within the scope of the risk that an employee such as Dauphine, a person who would resort to violence on the job, that a fellow employee would be injured as a result of that action.

87.

Dauphine's actions were in the course and scope of his employment with Union Pacific as he had just ordered Rufus to perform additional job duties to which Rufus had agreed.

88.

The actions of Union Pacific caused the injuries alleged by Plaintiffs, including the triggering of any mental condition of Rufus that was triggered as a result of the incident in question.

89.

As a result of Defendant's actions, Plaintiffs have suffered damages in the following areas:

a) Past, present, and future loss of earnings and fringe benefits;

b) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c) All other damages allowable by law.

90.

Plaintiffs pray for trial by jury.

WHEREFORE, Plaintiffs, RUFUS TREVILLION, SR. and LOLETTE TREVILLION,

pray that after due proceedings:

1) That Summons and Citation be issued against Defendant, Union Pacific Railroad Company;

2) That judgment be rendered in favor of Plaintiffs, Rufus Trevillion, Sr. and Lolette Trevilllion, and against Defendant, UNION PACIFIC RAILROAD COMPANY, and prays that this Court plaintiff back wages, statutory liquidated damages, and such other monetary award as may be deemed appropriate in amounts to be determined at a trial of this matter;

3) That Judgment be rendered in favor of Plaintiffs, Rufus Trevillion, Sr., and against Defendant, UNION PACIFIC RAILROAD COMPANY, for all costs, reasonable attorneys' fees, interest (both pre-judgment and post-judgment as allowed by law), and expert witness fees as allowed by law be granted to Plaintiff;

4) For trial on all issues by jury;

5) For all other just and equitable relief.

Respectfully submitted,

*/s/ Jeremy Cedars*
Jeremy Cedars (#27992)
Lineage Law, L.L.C
4615 Parliament Drive, Ste. 202
Alexandria, Louisiana 71303
Telephone: (318) 767-2226
Facsimile: (888) 200-3530
*Attorney for Plaintiffs, Rufus Trevillion, Sr. and Lolette Trevillion*

Please serve Summons and Complaint in compliance with Rule 4 to:
Union Pacific Railroad Company
through its designated agent for service of process
C.T. Corporation System
3867 Plaza Tower Drive
Baton Rouge, Louisiana 70816